1

2  Jack Ter-Saakyan SBN 266641
   Vartkes Artinian SBN 304009
3  **JT LEGAL GROUP, APC**
   101 N. Brand Blvd. #1130
4  Glendale, CA 91203
   Direct: 818-276-2464
5  E-Fax: 818-330-5265

6

7  Attorneys for Plaintiff,
   CHARLES HENDERSON
8

9            **UNITED STATES DISTRICT COURT**

10          **NORTHERN DISTRICT OF CALIFORNIA**

11

12  CHARLES HENDERSON, an          Case No. 17-CV-03815-JSW
    individual,
13                                 [The Hon. Jeffrey S. White]

14         Plaintiff,              **PLAINTIFF'S FIRST**
                                   **AMENDED COMPLAINT**
15  v.                              1. **Violation of Cal. Civ. Code**
                                       **§2923.5**
16  MTC FINANCIAL INC., dba         2. **Violation of Cal. Civ. Code**
17  TRUSTEE CORPS; JPMORGAN            **§2923.6**
    CHASE BANK, N.A.; and DOES 1    3. **Violation of Cal. Civ. Code**
18  through 20, inclusive,             **§2923.7**
                                    4. **Violation of Cal. Civ. Code**
19         Defendants.                 **§2924.12**
                                    5. **Unfair Business Practices**
20                                     **§17200**

21

22

23                                 Complaint Filed: July 5, 2017

24

25  Plaintiff CHARLES HENDERSON, as an individual, alleges as follows:

26                            **PARTIES**

27

28



1     1.     Plaintiff CHARLES HENDERSON (hereinafter referred to as "Plaintiff") is, and
2  at all times relevant to the facts herein has been, an individual residing in real property
3  commonly known as 1426 9th Avenue, Oakland, CA 94606 ("Subject Property") located in the
4  County of Alameda, in the state of California.
5     2.     Plaintiff is informed and believes and based thereon alleges that Defendant MTC
6  FINANCIAL INC. ("MTC"), is and, at all times relevant to the facts herein, was a California
7  Corporation, registered in the state of California, bound by the laws of the state of California,
8  doing business in the County of Alameda, state of California.
9     3.     Plaintiff is informed and believes and based thereon alleges that Defendant JP
10 MORGAN CHASE BANK, NATIONAL ASSOCIATION ("CHASE"), is and, at all times
11 relevant to the facts herein, was a business entity bound by the laws of the state of California,
12 doing business in the County of Alameda, state of California.
13    4.     The true names and capacities, whether individual, corporate, partnership,
14 associate, or otherwise of Defendants DOES 1 through 20, are unknown to Plaintiff who sue
15 each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon
16 alleges that each of the Defendants designated herein as a fictitiously named Defendant is, and
17 in some manner, was responsible for the events and happenings referred to herein, either
18 contractually or tortuously. When Plaintiff ascertains the true names and capacities of DOES 1
19 through 20, she will amend this Complaint accordingly.
20    5.     Plaintiff is informed and believes and based thereon alleges that Defendants and
21 each of them, are, and at all times herein mentioned were, the agents, joint ventures, officers,
22 members, representatives, servants, consultants or employees of their co-defendants, and in
23 committing the acts herein alleged, were acting within the scope of such affiliation with the
24 knowledge, permission, consent or subsequent ratification of their co-defendants.

**JURISDICTION AND VENUE**

25    6.     This Court has subject matter jurisdiction over this matter as the Subject Property
26 is located in the County of Alameda, California.



7. In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

8. Defendants herein purposefully directed their activities to the state of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Alameda, out of which this action arises and which form the basis of this action.

9. Defendants either are entities duly licensed to do business in the state of California or are entities that regularly conduct business within this judicial district within California.

10. Venue is proper for this Court since the Subject Property (described below) is located in the County of Santa Clara and because the events or events out of which this action arises and which form the basis for this action arise in the County of Santa Clara.

## GENERAL FACTUAL ALLEGATIONS

### The Home Affordable Modification Program & "Dual Tracking"

11. Pursuant to the Emergency Economic Stabilization Act of 2008, the U.S. Department of Treasury implemented the Home Affordable Modification Program ("HAMP") as a program designed to provide affordable mortgage loan modifications and other alternatives to foreclosure for eligible borrowers. *See* Pub.L. No. 110–343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201–5253). The centerpiece of the statute was the Trouble Asset Relief Program ("TARP"), through which the Secretary of the Department of Treasury was delegated broad powers to mitigate the financial impact of the foreclosure crisis and preserve homeownership. 12 U.S.C. §§ 5201, 5211–5241. Acting under this authority, the Secretary of the Treasury announced the "Making Home Affordable Program" in February 2009. One sub-part of this program is the HAMP. The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.



FIRST AMENDED COMPLAINT

12.     Under HAMP, loan servicers are provided with at least $1,000 incentive payments from the government for each permanent mortgage loan modification completed. *See Bosque v. CHASE Bank, N.A.* 762 F.Supp.2d 342 (2011), at 347. Servicers must then use a two-step process for HAMP modification. Step one includes eligibility criteria, which borrowers must meet in order to qualify for a Trial Period Plan ("HAMP TPP"). Step two involves providing the borrower with an Agreement that outlines the terms of the final modification. (SD 09–01 at 14.)

13.     However, lenders have misused the HAMP system, by engaging in what Attorney Generals call, "dual tracking," but for homeowners struggling to avoid foreclosure it may as well be called double-crossing. Dual tracking refers to what is now a common lender tactic, where while a borrower in default seeks an alternative loss mitigation strategy (e.g. a short sale or a loan modification), the lender quietly continues to pursue foreclosure at the same time. In the meanwhile, in order to drag out the process, the bank sends ongoing of requests to the borrower to send additional documentation (which is often documents the borrower has already provided). As the borrower is lulled into thinking that his or her home will not be taken away, and as the bank continues to send ongoing duplicative requests for more information, the trustee's sale date sneaks upon the borrower and on the sale date the bank immediately swoops in and conducts the trustee's sale in the midst of the loan modification process.

14.     On January 1, 2013, the Homeowner Bill of Rights, which intends to protect homeowners and borrowers during the mortgage and foreclosure process, went into effect. The Homeowner Bill of Rights prohibits a series of inherently unfair bank practices that have needlessly forced thousands of Californians, including Plaintiff into defaulting on their mortgages. The law restricts dual-track foreclosures, where a lender forecloses on a borrower despite being in discussions over a loan modification to save the home. It also guarantees struggling homeowners a single point of contact at their lender with knowledge of their loan and direct access to decision makers, and imposes civil penalties on fraudulently signed mortgage

FIRST AMENDED COMPLAINT

documents. In addition, homeowners may require loan servicers to document their right to foreclose.

15.    The Homeowner Bill of Rights builds upon and extends reforms first negotiated in the recent national mortgage settlement between 49 states and leading lenders. Attorney General Harris secured up to $18 billion for California homeowners in that agreement, and has also built a Mortgage Fraud Strike Force to investigate crime and fraud associated with mortgages and foreclosures. The Homeowner Bill of Rights consists of a series of related bills, including two identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng, Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg).

16.    On or about December 27, 2004, Plaintiff financed the Subject Property with a Loan in the amount of $222,500. Plaintiff concurrently executed a Deed of Trust ("Deed of Trust") as security for the Loan. The Deed of Trust for the Subject Property was recorded January 5, 2005 as Document Number 2005005203 in the Official Records of the Alameda County Recorder's Office. The named Trustee in the Deed of Trust was Long Beach Mortgage Company.  The named Lender and Beneficiary in the Deed of Trust was Long Beach Mortgage Company. Attached hereto and incorporated herein by reference as **Exhibit A** is a true and correct copy of the Deed of Trust.

17.    A substitution of Trustee was never recorded. Instead, on October 8, 2012 the Federal Deposit Insurance Corporation, As Receiver of Washington Mutual Bank Successor in Interest to Long Beach Mortgage Company recorded a Corporate Assignment of Deed of Trust which, among other things, assigns all beneficial interest in the Deed of Trust to CHASE. Attached hereto and incorporated herein by reference as **Exhibit B** is a true and correct copy of the Corporate Assignment.

18.    In this case, after experiencing hardship following an illness Plaintiff found himself in severe financial distress.



19. On or about December 19, 2012, a Notice of Default and Election to Sell under Deed of Trust ("NOD") was recorded in the County Recorder's Office as Document No. 2012423239. Attached hereto and incorporated herein by reference as **Exhibit C** is a true and correct copy of the NOD.

20. On or about May 10, 2017, a Notice of Trustee's Sale ("NTS") was recorded in the County Recorder's Office as Document No. 2017103577. Attached hereto and incorporated herein by reference as **Exhibit D** is a true and correct copy of the NTS.

21. None of the Defendants has contacted the borrower, or attempted to contact the borrower as required under Cal. Civil Code section 2923.5, to discuss his financial situation or options for avoiding foreclosure as required under California Civil Code section 2923.5. Indeed, the paragraph inserted into the NOD purporting to that the Defendants had complied with Due Diligence is false.

22. In violation of California Civil Code section 2923.5 Defendants caused to be executed and recorded the NOD even though the required contacts with Plaintiff had not been made. As Defendants have alleged that they had complied with §2923.5, Defendants had failed to send a certified letter, with return receipt requested to the Plaintiff or a HUD letter as required by code.

23. As a direct and foreseeable result of the Defendants' violations under California Civil Code section 2923.5, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the loss of the Subject Property, the opportunity to pursue foreclosure prevention alternatives she would have qualified for had the Defendants contacted her to discuss alternatives to foreclosure prior to recording the Notice of Default, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual and consequential damages that will be proven on date of trial.

24. In Early 2013, Plaintiff contacted Defendants and requested foreclosure prevention alternatives and assistance in the process of obtaining foreclosure prevention alternatives. Despite Plaintiff's request for assistance with this alternative to foreclosure



prevention, Plaintiff was not provided a "Case manager" in compliance with California Code § 2923.7 at any point after January 1, 2013 and to this date.

25.     And as a result, Plaintiff was never given a single point of contact that: (1) Communicated the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options; (2) Coordinated receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application; (3) Had access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; (4) Ensured that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; (5) Had access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

26.     When Plaintiff called Defendants with questions he had to constantly repeat his story to different representatives. Defendants would provide contradictory statements then transfer to another representative. He was told that in order to be provided a response he was required to provide multiple requests in writing.

27.     As a direct and foreseeable result of the Defendants' violation under California Civil Code sections 2923.7, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

28.     Furthermore, Plaintiff had submitted all documents requested for his application for loan modification, but was only provided a denial over the phone; Plaintiff never received a written denial explaining the reason for his denial, or providing an appeal period as required by §2923.6.



FIRST AMENDED COMPLAINT

29.     Upon information and belief, and based thereon, Plaintiff allege that Defendants never intended on offering Plaintiff an opportunity to modify her loan, and forebear on the foreclosure proceedings, and instead filed with the County Recorder's Office all necessary procedural documents to pursue a non-judicial foreclosure sale.

30.     Due to the violations of Defendants, Plaintiff had been denied a modification even though he had only missed two mortgage payments. As a result, Plaintiff had filed for Chapter 13 Bankruptcy in June of 2013 and a plan was confirmed on July 18, 2013.

31.     Throughout the duration of the Bankruptcy, Plaintiff had complied with the plan, and had made all required payments to the Trustee to address pre-petition debt in the amount of $27,552.38; in addition to the pre-payment debt that Plaintiff had addressed, Plaintiff stayed current on his post-petition monthly obligations to his foreclosing-creditor, Chase.

32.     On December 15, 2016, the Chapter 13 Trustee had filed a Notice of Final Cure Mortgage Payment, indicating that "The amount required to cure the default in the claim listed below has been paid in full", and a 21 day period was provided to Defendant-Chase to file and serve a Statement as a supplement to their proof of claim on against the Debtor to the Debtor, Debtor's Counsel, and the Chapter 13 Trustee.

33.     However, on January 5, 2017, Defendant Chase had filed  a "Response to Notice of Final Cure Payment" indicating that Plaintiff had post-petition arrears amounting to $13,513.70.

34.     Plaintiff contends that he had made every payment required, and even in excess of the required monthly payment; Plaintiff paid by money order, every month, in the amount of $2,350.00 when his payment due was only $2,117.27.

35.     Plaintiff not only did not miss any payments, but had paid more than he needed to, but rather than reviewing the accounting in their files, Defendant filed a post-petition debt response to the Notice of final Cure into the Claims Register so that it would not appear on the docket, and failed to serve this response statement indicating post-petition debt of $13,513.70 to the Debtor/Plaintiff as required.

FIRST AMENDED COMPLAINT

36.     According to "The Chapter 13 Standing Trustee's Final Report and Account" filed on March 30, 2017, Plaintiff's Chapter 13 Bankruptcy had been "Completed" as of December 6, 2016. Attached as **Exhibit E**, is a true and correct copy of the "Chapter 13 Standing Trustee's Final Report and Account" indicating the date of filing, plan confirmation, completion, and total payment.

37.     **Exhibit E** indicates on page 3 of 4 that "The trustee certifies that, pursuant Federal Rule of Bankruptcy Procedure 5009, the estate has been fully administered, the foregoing summary is true and complete, and all administrative matters for which the trustee is responsible have been completed. The trustee requests a final decree be entered that discharges the trustee and grants such other relief as may be just and proper."

38.     As of April 3, 2017, the Bankruptcy Court had issued a "Signed order Discharging Chapter 13 Trustee and a Final Decree".

39.     Now Defendant-Chase is attempting to wrongfully foreclose on a default that had been addressed in and during Bankruptcy.

40.     Plaintiff has suffered extreme emotional distress due the actions and inactions of the Defendants described above. Defendants have abused their rights as a lender, have engaged in unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff. The non-judicial foreclosure sale of the Subject Property was wrongful, and a prime example of "dual lending practices," which has officially become a condoned form of practice in the state of California.

41.     The Defendants, in breach of their promise to postpone the foreclosure sale as well as through substantive and procedural irregularities of the non-judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of the Subject Property pursuant to California *Civil Code* section 2924 *et seq.*  Plaintiff now faces the loss of the Subject Property because of their actions or omissions of actions, as well as lost the opportunity to obtain a HAMP loan modification, and the opportunity to pursue other foreclosure prevention options.

//

**FIRST CAUSE OF ACTION**

**(VIOLATION OF CAL. CIVIL CODE 2923.5)**

**Against ALL Defendants & DOES 1-20**

42.     By this reference, Plaintiff incorporate each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

43.     After becoming sick Plaintiff found himself in severe financial distress. Plaintiff attempted to make contact with CHASE, seeking a repayment plan option.

44.     Attached to the NOD is a Notice of Default Declaration Pursuant to California *Civil Code* 2923.5.  No reference is made to California *Civil Code* 2923.5. The Declaration dated on or about November 30, 2012, was signed by Clement J. Durkin, Operations Specialist, on behalf of CHASE.  The declaration was a boilerplate form which states that CHASE or its authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5.

45.     This pre-printed declaration was false because Plaintiff has no records or recollection that CHASE attempted to contact him. To the contrary, Plaintiff reached out to CHASE on several occasions to request help and to seek documents such as copies of the Note, Deed of Trust and payment history.

46.     California *Civil Code* section 2923.5 provides that, prior to the recording of a Notice of Default, a beneficiary or authorized agent must contact the borrower via telephone or in person to access the borrower's financial situation and explore options for the borrower to avoid foreclosure. A beneficiary or authorized agent is excused from this requirement only if the failure to contact the borrower occurred despite the due diligence of the beneficiary or authorized agent. "Due diligence" means sending a letter by first class mail that includes a toll free number made available by HUD and thereafter three (3) attempts to contact the borrower by phone to the primary number on the file.  A beneficiary or authorized agent satisfies the telephone contact requirements if it determines, after attempting to contact the borrower by telephone, that the primary and any secondary number have been disconnected.   If the beneficiary or authorized agent does not receive a response from the borrower within two weeks

FIRST AMENDED COMPLAINT

after the telephone requirements have been met, the beneficiary or authorized agent must send a certified letter to the borrower, with return receipt requested.

47.     A beneficiary and authorized agents are required to refrain from recording a Notice of Default and proceeding with the foreclosure process until thirty (30) days has passed from the time they made the contact with the borrower as described above or from the time they satisfied the due diligence requirements as described above.

48.     None of the Defendants has contacted the borrower, or attempted to contact the borrower as required under Cal. Civil Code section 2923.5, to discuss his financial situation or options for avoiding foreclosure as required under California *Civil Code* section 2923.5.  Indeed, the paragraph inserted into the NOD purporting to that the Defendants had complied is false.

49.     In violation of California *Civil Code* section 2923.5 Defendants caused to be executed and recorded the NOD even though the required contacts with Plaintiff had not been made.  Indeed, a declaration in the NOD that the requirements of California *Civil Code* section 2923.5 were met has not even been attached or referenced.

50.     This improper recording of the NOD in 2012 had become of issue as it had formed the basis for the Defendant's improper recording of the 2017 Notice of Trustee's Sale.

51.     Plaintiff had paid off his default and arrears such that the Defendants were required to Rescind the 2012 Notice of Default; but rather than rescinding the 2012 NOD, Defendants had sought a non-existing debt and used that as grounds to move forward with non-judicial foreclosure as they had attempted to in late 2012.

52.     As a direct and foreseeable result of the Defendants' violations under California *Civil Code* section 2923.5, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the loss of the Subject Property, the opportunity to pursue foreclosure prevention alternatives they would have qualified for had the Defendants contacted them to discuss alternatives to foreclosure prior to recording the Notice of Default, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual and consequential damages that will be proven on date of trial.

53.     Injunctive relief for a material violation of Cal. Civ. Code §2923.5 are provided for under §2924.19.



FIRST AMENDED COMPLAINT

**SECOND CAUSE OF ACTION**

**(VIOLATION OF CIVIL CODE SECTION 2923.6)**

**Against ALL Defendants & DOES 1-20**

54.    By this reference, Plaintiff incorporate each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

55.    Pursuant to California *Civil Code* section 2923.6, the mortgage servicer, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: "(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired."

56.    Plaintiff had begun his application for Loan Modification in Early 2013 after he learned a NOD was filed in December 2012.

57.    Plaintiff had submitted all documents in response to requests for documents by the Defendant; yet Plaintiff did not receive any acknowledgment letters as required by California *Civil Code* §2924.10.

58.    Within a matter of about 2 months, Plaintiff had been informed over the phone that he was denied for approval of a Loan Modification. Plaintiff, until this day, had not received a written denial letter indicating a statutory appeal period or the reasons for his denial.

59.    Defendants did not make a written determination that Plaintiff was not eligible for a first lien loan modification, and are in violation of California *Civil Code* section 2923.6.

60.    As a direct and foreseeable result of the Defendants' violation under California *Civil Code* sections 2923.6, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.



### THIRD CAUSE OF ACTION

### (VIOLATION OF CIVIL CODE SECTION 2923.7)

### Against ALL Defendants & DOES 1-20

61.    By this reference, Plaintiff incorporate each and every fact alleged in paragraphs 1 through 44 above, as though fully set forth herein.

62.    California *Civil Code* section 2923.7 provides that upon the request of a foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Despite Plaintiff's request for assistance with an alternative to foreclosure prevention, Plaintiff was not provided with the name or information of his "Case manager" after January 1, 2013 and to this date.

63.    Plaintiff contacted CHASE and requested a foreclosure prevention alternative and assistance in the process of obtaining a foreclosure prevention alternative. Despite Plaintiff's request for assistance with this alternative to foreclosure prevention, Plaintiff was not provided a Single Point of Contact ("SPOC") in compliance with California Code § 2923.7 at any point after January 1, 2013 and to this date.

64.    And as a result, Plaintiff was never given a single point of contact that: (1) Communicated the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options; (2) Coordinated receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application; (3) Had access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; (4) Ensured that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; (5) Had access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

65.    When Plaintiff called Defendants with questions he had to constantly repeat his story to different representatives. Defendants would provide contradictory statements then

FIRST AMENDED COMPLAINT



transfer to another representative. Then were told that in order to be provided a response they were required to provide multiple requests in writing.

66.    As a direct and foreseeable result of the Defendants' violation under California *Civil Code* sections 2923.7, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

## FOURTH CAUSE OF ACTION

## (DECLARATORY RELIEF PURSUANT TO CIVIL CODE SECTION 2924.12)

### Against ALL Defendants and DOES 1 through 20

67.    By this reference, Plaintiff incorporate each and every fact alleged in paragraphs 1 through 50 above, as though fully set forth herein.

68.    Pursuant to Cal. *Civil Code* section 2924.12 (a) (1), "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, **2923.6**, **2923.7**, 2924.9, **2924.10**, 2924.11, or 2924.17."

69.    Defendants are in material violation of Cal. *Civil Code* sections 2923.55, 2923.6, and 2923.7 as alleged herein. Thus, Plaintiff, borrower of the subject loan, is able to bring an action for injunction relief to enjoin these violations.

70.    Pursuant to Cal. *Civil Code* section 2924.12 (a)(2), "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief."

71.    Pursuant to Cal. *Civil Code* section 2924.12 (i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.



FIRST AMENDED COMPLAINT

**FIFTH CAUSE OF ACTION**

**(UNFAIR BUSINESS PRACTICES)**

**Against ALL Defendants and DOES 1 through 20**

72.     By this reference, Plaintiff incorporates each and every fact alleged in paragraphs 1 through 55 above, as though fully set forth herein.

73.     The Unfair Competition Law defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business and Professions Code §17200, *et seq.*  The Act also provides for injunctive relief and restitution for violations.

74.     By virtue of the acts and omissions of the defendants, they have engaged in unfair competition within the meaning of California Business and Professions Code §17200, thereby entitling Plaintiff to injunctive and restitutionary relief as provided by California Business and Professions Code §17203.

75.     Plaintiff alleges that based on the multiple material violations of California Civil Code, Defendants have acted unlawfully as their conduct and omission to act has violated another predicate statute.

76.     Furthermore, Plaintiff believes that Defendants actions in attempting to collect non-existent debt and omission to rescind the NOD, make contact with the borrower prior to recording the NOD, failing to provide written determination as to Plaintiff's application for loan modification, and failing to provide a SPOC, had availed Defendants to recourse through the "unfair" prong of the UCL §17200 as their conduct that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Paduano v. American Honda Motor Co., Inc.*, 169 Cal.App.4th 1453, 1469 (Cal. Ct. App. 2009).

77.     The aforementioned acts were willful, oppressive, and malicious, in that the Defendants engaged in acts of unfair competition with the deliberate intent to injure Plaintiff. Plaintiff is therefore entitled to payment of damages in a sum sufficient to punish the Defendants and to set an example and deter such conduct in the future.

78.     As a direct and foreseeable result of the Defendants' violation of Business and Professions Code §17200, Plaintiff has suffered and will continue to suffer substantial



irreparable harm.

79.    Plaintiff does not know the full extent of his damages, but believe the total damages from all causes alleged above exceeds the jurisdictional amount and is increasing each day.   When Plaintiff has ascertained more clearly the extent of its damages, it will seek amendment in order to allege them.

**WHEREFORE,** Plaintiff pray for judgment against Defendants as follows:

### FIRST, SECOND, THIRD, & FOURTH CAUSE OF ACTION

(1)    General damages in a sum according to proof against all Defendants in excess   of $25,000;

(2)    Compensatory damages provided by law including, not limited to California *Civil Code* § 3300;

(3)    For interest provided by law including, but not limited to California *Civil Code* § 3291 against all Defendants;

(4)    Consequential damages in an amount to be proven at trial;

(5)    Injunction prohibiting any further sale of Subject Property;

(6)    Equitable injunctive, and/or declaratory relief as the Court may deem just and proper.

### FIFTH CAUSE OF ACTION

(1)    Restitution of profits that the Defendants have unfairly obtained as a result of loss of income and interest;

(2)    Equitable injunctive, and/or declaratory relief as the Court may deem just and proper.

//

//

//

//



### **ON ALL CAUSES OF ACTION**

(1)     For costs and expenses incurred in this action;

(2)     For such other and further relief in law and equity that the Court deems just and proper.


DATED:  October 20, 2017                    **JT Legal Group, APC**


                              By:     /s/ Vartkes Artinian_____
                                      Vartkes Artinian, Esq.
                                      Attorneys for Plaintiff
                                      CHARLES HENDERSON



FIRST AMENDED COMPLAINT

Exhibit A

Lender Service - PLD
Fidelity National Financial

Recording Requested By:
LONG BEACH MORTGAGE COMPANY

Return To:
P.O. BOX 201085
STOCKTON, CA 95202

LOAN NO. 6356493-7917

Prepared By:



2005005203    01/05/2005 10:59 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    80.00

18   PGS

5360461
020-0138-015 ———[Space Above This Line For Recording Data]———

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    December    27,    2004    ,
together with all Riders to this document.
(B) "Borrower" is

CHARLES HENDERSON and JANICE HENDERSON, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is    1424 1426 9TH AVE,
OAKLAND, CA 94606                          . Borrower is the trustor under this Security Instrument.
(C) "Lender" is    LONG BEACH MORTGAGE COMPANY

Lender is a  Corporation
organized and existing under the laws of the State of Delaware

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

-6(CA) (0207)
Page 1 of 15              Initials: _JH_, _CH_
VMP MORTGAGE FORMS - (800)521-7291
TDCA01 (GU02/04) PC

Lender's address is   1400 S. DOUGLASS RD., SUITE 100,
ANAHEIM, CA 92806
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee" is**      LONG BEACH MORTGAGE COMPANY

**(E) "Note"** means the promissory note signed by Borrower and dated      December   27,   2004   .
The Note states that Borrower owes Lender
Two Hundred Twenty Two Thousand Five Hundred and no/100-----------------------------------------Dollars
(U.S. $ 222,500.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than      January      1,   2035      .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(CA) (0207)                         Page 2 of 15                              Initials: _____   Form 3005   1/01
TJICA02 (04/02/04) FC

**Loan No. 6356493-7917**

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of ALAMEDA :

[Type of Recording Jurisdiction]  [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number:  which currently has the address of
1424-1426 9TH AVENUE  [Street]
OAKLAND  [City], California 94606  [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0207)  Page 3 of 15  Form 3005  1/01
T3CA03 (04-02-03) PC  Loan No. 6356493-7917

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(CA) (0207)      Page 6 of 15      Initials _____      Form 3005   1/01

7DCA06 (04/02/04) PC

Loan No. 6356493-7917

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

6(CA) (0207)                        Page 7 of 15                        Form 3005   1/01

TDCA02 (34:02/04) PC

Initials

Loan No. 6356493-7917

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials _____

Loan No. 6356493-7917

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Loan No. 6356493-7917

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**-6(CA)** (0207)

TDCA11 (03.02.04) PC

Page 11 of 15

Initials: _JH_  _CH_

Form 3005   1/01

Loan No. 6356493-7917

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0207)

TDCA11 (0/02/99) PC

Page 12 of 15

Initials: _JN, CH_

Form 3005   1/01

Loan No. 6356493-7917

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No. 6356493-7917

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
CHARLES HENDERSON                    -Borrower

_____

_____ (Seal)
JANICE HENDERSON                     -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower                                -Borrower

State of California
County of *Alameda*                              } ss.

On *December 28, 2004* before me, *Carol A. Clow, Notary Public*

personally appeared

*Charles Henderson and Janice Henderson*

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/~~are subscribed
to the within instrument and acknowledged to me that ~~he/she/~~they executed the same in ~~his/her/~~their
authorized capacity(ies), and that by ~~his/her/~~their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CAROL A. CLOW
Commission # 1401618
Notary Public - California
Contra Costa County
My Comm. Expires Feb 21, 2007

-6(CA) (0207)                    Page 15 of 15                    Form 3005   1/01
FDCA15 (04-02-01) PC                                              Loan No. 6356493-7917

Loan No. 6356493-7917

# 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made this **27th** day of **December**, **2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**LONG BEACH MORTGAGE COMPANY**
**1400 S. DOUGLASS RD., SUITE 100**
**ANAHEIM, CA 92806**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**1424-1426 9TH AVENUE**
**OAKLAND, CA  94606**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                    Form 3170 3/93

Page 1 of 2

-57 (9304).01                    VMP MORTGAGE FORMS - (800)521-7291                    Initials:

1057.03 (04/30/2?)

Loan No. 6356493-7917

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
**CHARLES HENDERSON**                -Borrower

_____ (Seal)
**JANICE HENDERSON**                -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

-157 (9304)                    Page 2 of 2                    Form 3170 3/93
1057-2 (05/24-99) PC

Order No. 5360461

# EXHIBIT "ONE"

Lot 17 in Block 60, as said lot and block are shown upon that certain map entitled "Map of Resubdivision of Block 60, Clinton, Oakland, Alameda County, California" filed May 9, 1903, in the office of the County Recorder of Alameda County and of record at map book 19, page 16

Assessor's Parcel No: 020-0138-015

Exhibit B

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 0666570437





2012331049    10/08/2012 11:02 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:         18.00

1    PG



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY,** WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **CHARLES HENDERSON AND JANICE HENDERSON** and recorded on 01/05/2005 as Instrument # 2005005203 in Book n/a, Page n/a in the office of the ALAMEDA County Recorder, California.

Property more commonly known as: 1424-1426 9TH AVENUE, OAKLAND, CA 94606

**This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.**

**This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)**

IN WITNESS WHEREOF, this Assignment is executed on ___09__/_13___/2012 (MM/DD/YYYY)
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact POA RECORDED: 02/25/2011 DOC#: 20110225**

By: *Vanita L-Causey*
*Vernita L-Causey*
**VICE PRESIDENT**

### ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On ___09_/_13__/2012 (MM/DD/YYYY), before me appeared *Vernita L-Causey*_____, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

*Helen P. Tubbs*
*Helen P. Tubbs*
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

JPCAS 17620012 -7 WAMU  CJ4166204     [C] FRMCA1_JPCAS3

*17620012*

Exhibit C

Recording Requested By:
LSI TITLE AGENCY, INC.



2012423239    12/19/2012 09:49 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        24.00

3    PGS

When Recorded Mail To:
Sage Point Lender Services, LLC
34 Executive Park, Suite 100
Irvine, CA 92614

---

APN:    020-0138-015                      Title Order No. : 120385544
Property : 1424-1426 9TH AVENUE, OAKLAND, CA 94606        TS No. : 2068.01049

Space above this line for Recorder's use only

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**Pursuant to California Code Section 2924c(b)(1) please be advised of the following:**

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default is recorded (which date of recordation appears on this notice).

This amount is $12,978.84 as of December 18, 2012, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

See Attached Declaration

Page 1 of 2

TS No.:      **2068.01049**

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**
   **JPMorgan Chase Bank, National Association**
   **C/O JPMorgan Chase Bank, National Association**
   **3415 Vision Drive**
   **Columbus, OH 43219**
   **(866) 550-5705**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **SAGE POINT LENDER SERVICES, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated: **December 27, 2004,** executed by **CHARLES HENDERSON and JANICE HENDERSON, HUSBAND AND WIFE AS JOINT TENANTS,** as Trustor(s) to secure certain obligations originally in favor of **LONG BEACH MORTGAGE COMPANY** as Beneficiary, recorded as Instrument No. **2005005203,** on **January 05, 2005,** of Official Records, in the office of the County Recorder of **Alameda** County, **California** describing land therein as more fully described in the above mentioned deed of trust.

Said obligations including ONE NOTE FOR THE ORIGINAL sum of **$222,500.00,** that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and/or advances which became due on August 01, 2012 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has elected to accelerate the debt and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared in a written statement that it has complied with California Civil Code Section 2923.5 by either making contact with the borrower or attempting with due diligence to contact the borrower. A copy of said declaration is attached hereto.

   Dated: **December 18, 2012**

                              **SAGE POINT LENDER SERVICES, LLC**
                              **AS TRUSTEE**

                     By: _____
                                                   (signature)
                     Name: **Erika Duran**

**SAGE POINT LENDER SERVICES, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

**Borrower(s):**      CHARLES HENDERSON
                        JANICE HENDERSON

**Property Address:**     1424-1 9TH AVE.
                             OAKLAND CA 94606

**Loan Number:**       XXXXXX0437

# DECLARATION OF COMPLIANCE

### *(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares, under the laws of the State of California, as follows:

☐   The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☑   The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

      ☐   The real property is not owner-occupied residential real property as defined by the statute.

      ☐   The deed of trust was not recorded between January 1, 2003 and December 31, 2007.

      ☐   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

      ☐   The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

      ☐   The borrower has filed for bankruptcy under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

I certify under the laws of the state of California that the above is true and correct.

**JP Morgan Chase Bank, National Association**

Date:     11/30/2012         By: _____

City/State: Jacksonville, FL                   Clement J. Durkin

                                         Operations Specialist

ATTACHMENT TO NOTICE OF DEFAULT

Exhibit D

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614



2017103577   05/10/2017 09:49 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:        31.00

3  PGS

---

| APN: 020-0138-015. | TS No: CA08005515-14-1 | TO No: 120385544 |

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
**(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED December 27, 2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **June 8, 2017** at **09:00 AM**, **3rd Floor Lodge/Banquet Room, Scottish Rite Center, 1547 Lakeside Dr., Oakland, CA 94612**, **MTC Financial Inc. dba Trustee Corps**, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on January 5, 2005 _as Instrument No. 2005005203, of official records in the Office of the Recorder of Alameda County, California, executed by CHARLES HENDERSON AND JANICE HENDERSON, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), in favor of LONG BEACH MORTGAGE COMPANY as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: **1426 9TH AVENUE, OAKLAND, CA 94606**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $188,518.24 (Estimated).  However, prepayment premiums, accrued interest and advances will increase this figure prior to sale.  Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.  The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction.  You will be bidding on a lien, not on the property itself.  Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.  You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.  If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA08005515-14-1

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Auction.com at 800.280.2832 for information regarding the Trustee's Sale or visit the Internet Web site address www.Auction.com for information regarding the sale of this property, using the file number assigned to this case, CA08005515-14-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: May 3, 2017

MTC Financial Inc. dba Trustee Corps
TS No. CA08005515-14-1
17100 Gillette Ave
Irvine, CA 92614
Phone:949-252-8300
TDD: 866-660-4288

Myron Ravelo, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.Auction.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Auction.com at 800.280.2832**

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

TS No: CA08005515-14-1

Exhibit E

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

In re:

CHARLES MICHAEL HENDERSON
JANICE MARTIN HENDERSON
Debtor(s)

Case No. 13-43400-CN 13

**CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT**

Martha G. Bronitsky, chapter 13 trustee, submits the following Final Report and Account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The trustee declares as follows:

1) The case was filed on 06/12/2013.

2) The plan was confirmed on 07/18/2013.

3) The plan was modified by order after confirmation pursuant to 11 U.S.C. § 1329 on NA .

4) The trustee filed action to remedy default by the debtor in performance under the plan on NA .

5) The case was completed on 12/06/2016.

6) Number of months from filing to last payment: 42.

7) Number of months case was pending: 46.

8) Total value of assets abandoned by court order: NA .

9) Total value of assets exempted: $349,733.60.

10) Amount of unsecured claims discharged without payment: $2,154.00.

11) All checks distributed by the trustee relating to this case have cleared the bank.

**Receipts:**

|  |  |  |
|---|---|---|
| Total paid by or on behalf of the debtor | $38,715.57 | |
| Less amount refunded to debtor | $1,498.45 | |
| **NET RECEIPTS:** | | **$37,217.12** |

**Expenses of Administration:**

|  |  |  |
|---|---|---|
| Attorney's Fees Paid Through the Plan | $2,800.00 | |
| Court Costs | $0.00 | |
| Trustee Expenses & Compensation | $1,813.28 | |
| Other | $0.00 | |
| **TOTAL EXPENSES OF ADMINISTRATION:** | | **$4,613.28** |

Attorney fees paid and disclosed by debtor:     $2,000.00

**Scheduled Creditors:**

| Creditor Name | Class | Claim Scheduled | Claim Asserted | Claim Allowed | Principal Paid | Int. Paid |
|---|---|---|---|---|---|---|
| AMERICAN EXPRESS/BECKET AND I | Unsecured | 17.00 | NA | NA | 0.00 | 0.00 |
| BH FINANCIAL SVCS C/O KENOSIAN | Secured | 975.64 | 125.63 | 125.63 | 125.63 | 0.00 |
| BRIAN N. WINN | Secured | 5,574.13 | NA | NA | 0.00 | 0.00 |
| CENTRAL FINANCIAL CONTROL | Unsecured | 395.00 | NA | NA | 0.00 | 0.00 |
| EOS CCA | Unsecured | 950.00 | NA | NA | 0.00 | 0.00 |
| JEFFERSON CAPITAL SYSTEMS LLC | Unsecured | NA | 1,369.24 | 1,369.24 | 1,369.24 | 0.00 |
| JPMORGAN CHASE BANK | Secured | 26,107.14 | 27,552.38 | 27,552.38 | 27,552.38 | 0.00 |
| KAISER PERMANENTE | Unsecured | 666.00 | NA | NA | 0.00 | 0.00 |
| LVNV FUNDING C/O RESURGENT CA | Unsecured | NA | 443.64 | 443.64 | 443.64 | 0.00 |
| LVNV FUNDING LLC | Secured | 12,163.99 | NA | NA | 0.00 | 0.00 |
| PARAGONWAY | Unsecured | 126.00 | NA | NA | 0.00 | 0.00 |
| QUANTUM3 GROUP LLC | Unsecured | NA | 3,112.95 | 3,112.95 | 3,112.95 | 0.00 |

**UST Form 101-13-FR-S (9/1/2009)**

| Summary of Disbursements to Creditors: | Claim Allowed | Principal Paid | Interest Paid |
|---|---|---|---|
| **Secured Payments:** | | | |
| Mortgage Ongoing | $0.00 | $0.00 | $0.00 |
| Mortgage Arrearage | $27,552.38 | $27,552.38 | $0.00 |
| Debt Secured by Vehicle | $0.00 | $0.00 | $0.00 |
| All Other Secured | $125.63 | $125.63 | $0.00 |
| **TOTAL SECURED:** | **$27,678.01** | **$27,678.01** | **$0.00** |
| | | | |
| **Priority Unsecured Payments:** | | | |
| Domestic Support Arrearage | $0.00 | $0.00 | $0.00 |
| Domestic Support Ongoing | $0.00 | $0.00 | $0.00 |
| All Other Priority | $0.00 | $0.00 | $0.00 |
| **TOTAL PRIORITY:** | **$0.00** | **$0.00** | **$0.00** |
| | | | |
| **GENERAL UNSECURED PAYMENTS:** | **$4,925.83** | **$4,925.83** | **$0.00** |

| Disbursements: | | |
|---|---|---|
| Expenses of Administration | $4,613.28 | |
| Disbursements to Creditors | $32,603.84 | |
| **TOTAL DISBURSEMENTS :** | | **$37,217.12** |

12)  The trustee certifies that, pursuant to Federal Rule of Bankruptcy Procedure 5009, the estate has been fully administered, the foregoing summary is true and complete, and all administrative matters for which the trustee is responsible have been completed. The trustee requests a final decree be entered that discharges the trustee and grants such other relief as may be just and proper.

Dated: 03/30/2017

By:/s/ Martha G. Bronitsky
Trustee

**STATEMENT**:  This Unified Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

**UST Form 101-13-FR-S (9/1/2009)**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing CHAPTER 13 STANDING TRUSTEE'S FINAL REPORT AND ACCOUNT was served on the parties listed below by ordinary U.S. Mail or served electronically through the Court's ECF System at the e-mail address registered with the Court on this 30th day of March, 2017.


CHARLES MICHAEL HENDERSON          JEFF D HOFFMAN ATTY
JANICE MARTIN HENDERSON            825 WASHINGTON #330
1426 - 9TH AVENUE                  OAKLAND, CA  94607
OAKLAND, CA  94606


ELECTRONIC SERVICE - United States Trustee


Date:  March 30, 2017                    /s/ Trustee Martha G. Bronitsky
                                         ————————————————————————
                                         Trustee Martha G. Bronitsky
                                         Chapter 13 Trustee
                                         PO Box 5004
                                         Hayward, CA  94540